## S04A0960. HUNT v. THE STATE.
### (604 SE2d 144)

HUNSTEIN, Justice.

Anthony Leon Hunt was convicted of malice murder, felony murder and aggravated assault in the shooting death of Melvin Manual. He was sentenced to life imprisonment for the felony murder conviction. He appeals from the denial of his motion for new trial.[1] Finding no error, we affirm.

1. The jury was authorized to find that Hunt was standing outside the home of Coleman, his then-girlfriend, after midnight when he was approached by the victim, Melvin Manual. Coleman, her brother Antonio Young and witness Redmond observed the two men begin to scuffle. Manual took a pistol from Hunt during the fight but did not use the weapon. He instead turned and ran. Hunt produced a second weapon and ran after Manual, shooting at him. Manual fell once to the ground but regained his feet and continued running. Hunt followed. Although no eyewitness observed the final confrontation, they heard several more shots. Hunt walked past witness Young as he returned, at which time he was carrying two weapons. Hunt confronted witness Redmond and accused him of acting together with the victim in order to rob Hunt, stating "that's why the [victim] is fixing to die now." Manual's body was discovered shortly thereafter in a pool of blood. Expert testimony established that he died of multiple gunshot wounds inflicted by two different weapons of the type seen by witnesses in Hunt's possession after the shooting. When Hunt was arrested in 1997, he denied being at the crime scene and told police that it was his brother who killed Manual. In her testimony Coleman described the differences in appearance between the brothers and stated that Hunt's brother was not in the neighborhood at the time of the crimes.

The evidence adduced was sufficient to enable a rational trier of fact to find Hunt guilty of felony murder predicated on aggravated

---

[1] The crimes occurred on October 27, 1995. Hunt was indicted October 24, 1997 in Fulton County on charges of malice murder, two counts of felony murder, armed robbery and aggravated assault. The armed robbery charge and the felony murder charge predicated thereon were dead docketed. He was found guilty of the remaining charges on February 25, 2000. On March 6, 2000, he was sentenced to life in prison for the malice murder (to run consecutive to a Federal sentence he was serving for armed robbery and use of a firearm during a crime of violence); however, in its order on Hunt's timely-filed motion for new trial, as amended in February 2003 so as to assert, inter alia, a jury charge error pursuant to *Harris v. State*, 273 Ga. 608 (2) (543 SE2d 716) (2001), the trial court vacated the malice murder conviction and resentenced Hunt to life for the felony murder conviction. The trial court denied the motion for new trial by order filed June 25, 2003. Hunt filed his notice of appeal on July 7, 2003. The appeal was docketed February 17, 2004 and was submitted for decision on the briefs.

assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hunt contends the trial court erred by denying his motion for a mistrial based on his claim that the State failed to produce written notes taken by Investigator Crandall and/or the assistant district attorney during pre-trial interviews with two witnesses, Redmond and Young, after Hunt opted in to reciprocal discovery. OCGA § 17-16-1 et seq. At trial, Redmond and Young testified that they had talked with either Crandall alone or Crandall with the ADA on several occasions and that they had seen their interviewers writing notes as they talked. When Hunt's counsel objected that the defense had not been provided a copy of those notes, the trial court questioned the ADA, who stated for the record that only names, addresses and contact numbers obtained from the witnesses had been written down (and thereafter provided to the defense); that he and Crandall did not take down any witness statements and the witnesses did not review, sign or initial any statements; and that the State did not have any statements from the witnesses that had not been provided to the defense. Crandall was not called as a witness and the trial court did not give a charge to the jury on missing evidence.

Although OCGA § 17-16-7 requires the State to produce "any statement of any witness that is in the possession, custody, or control of the state," that requirement applies only to statements that have either been recorded or committed to writing. OCGA § 17-16-1 (1); *Forehand v. State*, 267 Ga. 254 (3) (477 SE2d 560) (1996). "This statutory obligation is not triggered when a witness merely makes an oral statement." Id. at 255 (3). Although Hunt cross-examined the witnesses, their testimony did not contradict the assertion of the ADA that the written notes encompassed no matters other than the names, addresses and phone numbers later provided to the defense. Accordingly, Hunt failed to establish that OCGA § 17-16-7 had been violated, *Forehand*, supra, and the trial court did not abuse its discretion in denying Hunt's motion for a mistrial. See *McGee v. State*, 272 Ga. 363 (2) (529 SE2d 366) (2000).

3. It was not error for the trial court to refuse to give a jury charge on missing evidence for which no written request was made. *Barnes v. State*, 260 Ga. 398 (3) (396 SE2d 207) (1990).

4. Hunt contends that he received ineffective assistance of counsel because his trial counsel failed to call Investigator Crandall as a witness. To prevail on his ineffectiveness claim, Hunt was required to establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Hudson v. State*, 277 Ga. 581 (4) (591 SE2d 807) (2004). However, Crandall did not testify at the hearing on the motion for new trial and thus no evidence was

presented to support Hunt's claim that Crandall's testimony was crucial to the defense. See id. at 581 (4) (a); see also *Woods v. State*, 275 Ga. 844 (3) (d) (573 SE2d 394) (2002) (failure of trial counsel to employ evidence not prejudicial in absence of showing that evidence would have been relevant and favorable). Accordingly, Hunt did not carry his burden of proving that counsel's performance, even if deficient, prejudiced Hunt's defense. *Strickland*, supra. Moreover, we find that counsel's tactical decision not to call Crandall as a witness, as explicated at the trial and motion hearing,[2] in order to preserve opening and concluding closing argument fell within the bounds of reasonable professional conduct. See *Harris v. State*, 274 Ga. 422 (9) (554 SE2d 458) (2001).

5. In light of our holding in Division 2, Hunt cannot carry his burden under *Strickland*, supra, to establish that trial counsel's failure to make a written request for a charge on missing evidence constituted ineffective assistance of counsel. Accordingly, the trial court did not err by denying Hunt's motion for new trial. See generally *Woods*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 12, 2004.

*Amy H. Bogartz*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Andrette Watson, Assistant Attorney General*, for appellee.

---

[2] At trial Hunt's counsel commented that the defense could subpoena Crandall, but that to do so would result in the loss of the closing argument advantage merely to obtain Crandall's testimony that he did not take any statements. Trial counsel repeated that sentiment at the hearing on Hunt's motion for new trial, noting that in light of the ADA's representations that no notes were taken, "I guess I just didn't see any reason to have Investigator Crandall get on the witness stand and elicit that same answer from him in front of the jury."