## A08A0838. PORT v. THE STATE.
(671 SE2d 200)

BERNES, Judge.

Following a jury trial, David Edward Port was convicted of false imprisonment, simple assault, and criminal trespass. He argues on appeal that the evidence was insufficient to support his conviction and that his trial counsel was ineffective. We find no error and affirm.

> On review from a criminal conviction, we view the evidence in the light most favorable to the prosecution to determine only whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. We do not assess witness credibility or weigh the evidence, but determine only its sufficiency.

(Citations omitted.) *Hester v. State*, 287 Ga. App. 434 (651 SE2d 538) (2007).

So viewed, the evidence at trial showed that Port and the victim had been in a romantic relationship and at one time were engaged to

be married. After the relationship ended, the victim communicated to Port in numerous e-mails, the contents of which were read to the jury at trial, that he was no longer welcome to see or contact her. The state also presented evidence that on a prior occasion, Port arrived unannounced at the victim's home in the middle of the night and, after summoning the police, the victim told Port in the presence of the officers that he was not permitted to return to her residence.

On the day in question, Port went to the victim's home uninvited and let himself inside. As the victim exited the bathroom, Port was standing in the hallway in front of her. Alarmed, the victim attempted to flee into an adjacent room. Port and the victim "struggled" as he attempted to prevent her from passing him. Once in the adjacent room, Port took the telephone from the victim as she tried to call 911. The victim ultimately pushed out the screen and successfully exited the residence through an open window despite Port's attempt to pull her back inside.

Port was arrested and charged with false imprisonment, family violence battery, criminal trespass, and obstruction of a 911 call. The jury convicted him of false imprisonment, simple assault as a lesser included offense of family violence battery, and criminal trespass. This appeal followed.

1. The evidence set forth above was sufficient to sustain Port's convictions. See OCGA §§ 16-5-41 (a); 16-5-20 (a); 16-7-21 (b) (2). See also *Turner v. State*, 253 Ga. App. 760, 761 (1) (560 SE2d 539) (2002) ("To prove false imprisonment all that is required is there be an arrest, confinement or detention of the person, without legal authority, which violates the person's personal liberty (i.e., against his or her will).") (punctuation and footnote omitted); *Wroge v. State*, 278 Ga. App. 753, 754 (1) (629 SE2d 596) (2006) (the commission of a simple assault requires only that the defendant caused the victim reasonable apprehension of immediately receiving violent injury, not that the defendant specifically intended to cause that apprehension); *Williams v. State*, 261 Ga. App. 511, 512 (1) (583 SE2d 172) (2003) ("A person commits criminal trespass if he enters or remains on the premises of another with knowledge that he has been given notice that his presence is forbidden.") (footnote omitted); *Cline v. State*, 199 Ga. App. 532, 533 (2) (405 SE2d 524) (1991) (intent may be inferred "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted") (punctuation omitted) (citing OCGA § 16-2-6).

2. Port also asserts that his trial counsel was ineffective. Specifically, he contends that his counsel failed (a) to object to the admission of multiple e-mail communications between himself and the victim that were read to the jury during the trial; (b) to have meaningful

consultation with him prior to significant events, specifically plea negotiation; (c) to effectively communicate with him during voir dire; (d) to object to the admission of a gift that Port delivered to the victim after the incident in question; (e) to object to a reference in an e-mail that he owned weapons; and (f) to adequately advise him of the rules and procedures of the sentencing phase of the trial.

To assert a successful claim of ineffective assistance, Port must prove both that his counsel was deficient and that the alleged deficiency prejudiced his defense. *Smith v. State*, 289 Ga. App. 742, 743 (2) (658 SE2d 156) (2008). He must first "overcome the strong presumption that counsel's performance fell within a broad range of reasonable professional conduct." (Citation, punctuation and footnote omitted.) *Williams v. State*, 293 Ga. App. 193, 197 (3) (666 SE2d 703) (2008). Even then, "[r]eversal is not warranted, regardless of his counsel's performance, if [Port] cannot show a reasonable probability that the outcome of the trial would have been different absent his counsel's alleged errors." (Citation omitted.) *Smith*, 289 Ga. App. at 743 (2).

(a) Port argues that his counsel should have objected to the admission of numerous e-mail communications exchanged between himself and the victim. The e-mails were written after Port and the victim had separated, but before the incident in question. They consisted mainly of Port's expressions of love and affection for the victim interwoven with his pleas to reconcile, and her occasional responses that his attempts to communicate with her were in no uncertain terms unwelcome.

At the motion for new trial hearing, Port's trial counsel explained that the reason she did not object to the admission of the e-mails in their entirety was twofold. First, although she successfully moved to redact specific segments of the e-mails that she deemed overly prejudicial and/or irrelevant, she generally believed the communications to be relevant to Port's state of mind in relation to the victim and therefore concluded that an outright objection would be futile. Second, she concluded that the e-mails themselves could be beneficial to Port's defense, particularly the claim for family violence battery, since they did not contain any threat of violence and, in general, "were quite loving and showed a great affection for" the victim.

We agree with trial counsel's assessment that the e-mail communications were relevant to Port's state of mind and were thus admissible. See *Cannon v. State*, 257 Ga. 475, 478 (3) (360 SE2d 592) (1987) ("[E]vidence of prior difficulties between an accused and the victim is admissible to illustrate the accused's motive, intent, or bent of mind toward the victim.") (citations and punctuation omitted); *Boone v. State*, 234 Ga. App. 373 (1) (506 SE2d 884) (1998) (letters

that defendant had written to his wife during their separation were relevant to his state of mind when he subsequently murdered his wife's lover).

Furthermore, trial counsel's decision not to object to their admission constituted reasonable trial strategy. See *Sillah v. State*, 291 Ga. App. 848, 852 (3) (663 SE2d 274) (2008) ("[A]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel.") (citation, punctuation and footnote omitted); *Defrancisco v. State*, 289 Ga. App. 115, 118 (1) (d) (656 SE2d 238) (2008); *Nichols v. State*, 288 Ga. App. 118, 121-122 (3) (b) (653 SE2d 300) (2007). This conclusion is buttressed by the fact that the jury did indeed acquit Port of two of the charges posed against him, including family violence battery. See *Smith v. State*, 291 Ga. App. 725, 727 (2), n. 2 (662 SE2d 817) (2008) (noting that obtaining an acquittal on a charge "is a circumstance which strongly supports the conclusion that the assistance actually rendered by defendant's trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render") (citations and punctuation omitted). Consequently, the admission of the e-mail communications affords Port no basis for a claim of ineffective assistance of counsel. *Sillah*, 291 Ga. App. at 852 (3); *Defrancisco*, 289 Ga. App. at 118 (1) (d); *Nichols*, 288 Ga. App. at 121-122 (3) (b). Because trial counsel's performance was not deficient, Port's claims of prejudice afford no basis for reversal.

(b) Port next argues that the lack of meaningful consultation with his trial attorney resulted in his decision to reject a favorable plea bargain without being fully advised of the evidence to be presented against him at trial. During negotiations, Port agreed to accept a plea offer from the state. The trial court rejected the proposed plea, but indicated that it would accept a guilty plea conditioned upon Port serving additional jail time. Port declined to accept the trial court's alternate plea and proceeded to trial, ultimately receiving a jail sentence greater than that which he would have received had he accepted the plea.

Ironically, Port's complaint is premised upon his alleged ignorance of the details of the numerous e-mails that he himself had written to the victim. His trial counsel testified at the motion for new trial hearing that she was aware of the e-mails at the time of the plea negotiations and that, although they did not specifically review each and every e-mail at that time, she and Port did engage in "general discussions" about their content.

Regardless of whether Port's counsel should have allocated more time to refreshing his memory about the details of his previous writings, in order to succeed on his claim he must show not only

deficient performance, but also resulting prejudice. In the context of a rejected plea offer, "such prejudice can only be shown by some indication that the defendant was amenable to the offer." *Lloyd v. State*, 258 Ga. 645, 648 (2) (b) (373 SE2d 1) (1988). Port indicated at the motion for new trial hearing that he rejected the alternate plea proposed by the trial court because of the undesirable term of confinement, and did not present any evidence that his decision would have changed had his counsel discussed in depth the numerous e-mails to his satisfaction. He cannot now claim that his counsel was ineffective because he chose to accept the risk of going to trial. See id.; *Himes v. State*, 274 Ga. App. 541, 542 (618 SE2d 174) (2005).

(c) Port next asserts that his trial counsel did not consult with him during the voir dire process and failed to strike a juror at his direction. Specifically, Port argues that his counsel was deficient because she allegedly allowed a juror to remain on the panel after the juror confessed that she had experienced a "bad breakup."

Voir dire was not transcribed and there is no record evidence of the juror about which Port complains. Although Port's counsel had no recollection of the juror at issue, both she and Port testified at the new trial hearing that Port was present during voir dire and given the opportunity to take notes. Port claims to have written an objection about the juror in question and given it to his counsel after the voir dire process. Port's counsel, in conjunction with a second attorney, then used her professional judgment to select the jury panel.

"The decision on which jurors to accept and which jurors to strike is one of trial strategy, and trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable." (Citation and punctuation omitted.) *Stevenson v. State*, 272 Ga. App. 335, 342 (3) (e) (612 SE2d 521) (2005). Port has not shown that his counsel's performance was deficient in selecting the jury. See id.; *Johnson v. State*, 275 Ga. App. 21, 26 (7) (d) (619 SE2d 731) (2005).

(d) Port contends that his trial counsel was ineffective because she failed to object to evidence of a gift ordered by Port and delivered to the victim after the incident in question. Specifically, the state presented a receipt from Victoria's Secret that indicated that Port had sent lingerie to the victim sometime following the instant confrontation.

Prior to trial, Port's counsel moved to limit the scope of the evidence to include only events that occurred prior to the incident in question. The court agreed that evidence of subsequent events should be excluded as irrelevant. At the time that the state moved to introduce the receipt, Port's counsel objected on the ground that the receipt contained inadmissible hearsay indicating that the gift came

from Port, but did not argue that it constituted a subsequent difficulty between the parties.

We agree that Port's counsel was deficient for failing to object to the receipt on the ground that it was inadmissible under the trial court's prior ruling excluding evidence of subsequent events. We nonetheless conclude that the competent evidence presented at trial rendered the admission of the receipt harmless. See *Cole v. State*, 279 Ga. App. 219, 225 (8) (a) (630 SE2d 817) (2006) ("[T]he erroneous admission of . . . evidence may be harmless if there is such overwhelming evidence of the defendant's guilt that it is highly probable that the error did not contribute to the guilty verdict.") (punctuation and footnote omitted). See also *Bell v. State*, 291 Ga. App. 169, 172-173 (4) (661 SE2d 207) (2008); *Ferguson v. State*, 262 Ga. App. 28, 32 (4) (a) (584 SE2d 618) (2003).

(e) Port claims that his counsel was deficient because she failed to object to a reference in an e-mail which indicated that he owned weapons. The reference was not in the form of a threat, but was contained in a lengthy e-mail written by Port setting out the location of certain items that Port was returning to the victim. Even assuming that trial counsel was deficient in this regard, her failure to object to the e-mail was harmless because, given the overwhelming evidence against Port, it is unlikely that this evidence contributed to the guilty verdict. *Nickerson v. State*, 248 Ga. App. 829, 832 (2) (a) (545 SE2d 587) (2001).

(f) Finally, Port argues that his counsel failed to adequately inform him of the rules and procedures governing the sentencing phase of the trial. Port's mother coordinated an effort whereby seven of Port's friends and business associates sent letters to the court praising Port's good character. Although the state objected to the admission of all of the letters as a substitute for live testimony, Port's counsel reached an agreement with the prosecutor that would allow her to introduce without objection the letters that she deemed to be the most significant and representative of the group.

Port claims that his counsel was deficient for negotiating with the state to admit the selective letters rather than advising him to secure the appearance of the witnesses themselves. His counsel testified at the motion for new trial hearing that she was concerned about the logistics of coordinating live testimony from the numerous witnesses, the majority of whom lived outside of the state. Further, she deemed some of the witness statements to be repetitive and/or less relevant because they came from individuals who did not know Port well or had not seen him for many years. She therefore worked with Port to select the "most important" letters, including one from a woman who used to date Port.

Decisions regarding which witnesses to call and what evidence to present during sentencing are matters of trial strategy. *DeYoung v. State*, 268 Ga. 780, 786 (5) (493 SE2d 157) (1997). Port has set forth no evidence that, had the witnesses actually testified during the sentencing hearing, they would have offered any information that was not contained in the letters that were submitted to the trial court. Further, the letters that Port's counsel chose to exclude were deemed by her to be either cumulative or less relevant to Port's defense. Under these circumstances, Port cannot show that he was prejudiced by his attorney's decision to present the written, as opposed to live, statements to the court. See id.; *Guyton v. State*, 281 Ga. 789, 794 (10) (d) (642 SE2d 67) (2007).

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED NOVEMBER 14, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008.

*William M. Overend*, for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Nancee E. Tomlinson, Assistant District Attorneys*, for appellee.